UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NICHOLAS WINCHESTER,

    Plaintiff,

  v.

TERRY MARKETTI, *et al.*,

    Defendants.

No. 11 CV 9224
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Plaintiff Nicholas Winchester brings this suit under 42 U.S.C. § 1983 for alleged constitutional deprivations and other injuries he suffered while incarcerated at Grundy County Jail for nine months in 2010. Defendants move to dismiss several claims contained in the complaint. For the following reasons, Defendants' motion is granted in part and denied in part.

## I. BACKGROUND

### A. The Parties

Plaintiff Nicholas Winchester is a 30-year-old male. He is a resident of Morris, Illinois. Defendant County of Grundy is a county of the State of Illinois. It oversees the Grundy County Sheriff's Department, which runs the Grundy County Jail. Defendant Terry Marketti is the Grundy County Sheriff and head of the Grundy County Jail. In this position, he promulgates rules, regulations and policies concerning the medical care of inmates. Defendant Duane McComas was the Superintendent of the Grundy County Jail during the relevant time period. Defendants Van Cleave, Walker, and Unknown Employees of Grundy County Jail were employed as correctional officers at the Grundy County Jail during the relevant time period. These Defendants are hereinafter referred to collectively as the "Grundy County Defendants."

Defendant Correctional HealthCare Companies, Inc. ("CHC") is a private correctional healthcare company. Defendant Health Professionals, LTD. ("HPL"), a CHC subsidary, is a private correctional healthcare company that was under contract to provide medical care at the Grundy County Jail during the relevant time period.[1] Defendant Dr. Stephen Cullinan is a medical doctor who was employed by HPL during the time period in question. Defendant Marjorie Clauson, RN, is a registered nurse who was employed by HPL during the time period in question. Both Defendants Cullinan and Clauson provided evaluation, care and treatment for inmates at the Grundy County Jail. These Defendants are hereinafter referred to collectively as the "Medical Care Provider Defendants."

B.  **Alleged Facts**

The pertinent facts taken from the complaint are as follows. On March 4, 2010, police officers from the City of Morris, Illinois beat Plaintiff severely during the course of an arrest. Plaintiff was taken to the hospital where he was treated for a brain hemorrhage and other injuries. He was released from the hospital on March 12, 2010 and was immediately taken into custody by police officers and brought to the Grundy County Jail.

On the evening of March 15, 2010, Plaintiff was brought before a judge for his probable cause hearing. The judge ordered Plaintiff detained pending trial.

---

[1]Defendants claim that HPL and CHC were distinct legal entities during the time period in question and that CHC was not under contract to provide medical care at Grundy County Jail. To prove this assertion, Defendants attached a copy of the contract that existed between HPL and Grundy County during the period in question, and an affidavit of Defendant Cullinan attesting to the fact that HPL and CHC were distinct legal entities. Even if I can consider these documents under *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244 (7th Cir. 2008), I am not satisfied with their probative force. I reserve judgment on this issue for a later stage.

Plaintiff was held as a pretrial detainee at the Grundy County Jail for nine months. During this period Plaintiff began suffering from seizures. He also suffered from anxiety attacks and back pain. The complaint does not give a specific date when the seizures began, nor does it state how many seizures Plaintiff suffered from. Plaintiff told Defendants of his need for anti-seizure, anti-anxiety, and pain medication. Defendants also observed his physical symptoms.

Despite being on notice of Plaintiff's serious medical need, Defendants failed to provide needed medical attention. The complaint states that Defendants "took no steps" to provide Plaintiff with his medications (Compl. ¶ 33) and that he sometimes "went a week or more without any medications." (Compl. ¶ 34). Rather than give Plaintiff the medication he needed, Defendant Clauson provided him with Benadryl, for which he had no need. Defendant Clauson told Plaintiff that he would not be given his other medications unless he took the Benadryl.

As a result of the deficient medical care Plaintiff suffered repeated seizures, anxiety attacks and persistent back pain, which resulted in physical and emotional injuries.

On December 28, 2011, Plaintiff filed a seven-count complaint against Defendants. Counts one through four–denial of medical care, unreasonable detention, conspiracy, and failure to intervene–are brought pursuant to 42 U.S.C. § 1983. Counts five through seven–intentional infliction of emotional distress, respondeat superior, and a claim for indemnification–are state law claims. Defendants move to dismiss all claims, with the apparent exception of the state law claims against Defendant Clauson.

## II. ANALYSIS

A Motion to Dismiss under Rule 12(b)(6) requires that I analyze the legal sufficiency of the complaint, and not the factual merits of the case. *Autry v. Northwest Premium Servs., Inc.*,

144 F.3d 1037, 1039 (7th Cir.1998). I must take all facts alleged in Plaintiff's complaint as true and draw all reasonable inferences from those facts in favor of Plaintiff. *Caldwell v. City of Elwood*, 959 F.2d 670, 671 (7th Cir.1992). Plaintiff, for its part, must do more than solely recite the elements for a violation; it must plead with sufficient particularity so that its right to relief is more than a mere conjecture. *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff must plead its facts so that, when accepted as true, they show the plausibility of its claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff must do more than plead facts that are "consistent with Defendant's liability" because that only shows the possibility, not the plausibility, of their entitlement to relief. *Id.* (internal quotations omitted).

In applying *Twombly* and *Iqbal*, the Seventh Circuit has required the plaintiff to "provid[e] some specific facts" to support the legal claims set out in the complaint. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). "[T]he plaintiff must give enough details about the subject matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). The more complex the claim, the greater the level of factual specificity required for the story to hold together. *Id.* at 405.

A.  *Minneci v. Pollard*

Defendants first argue that the claims against the Medical Care Provider Defendants should be dismissed in light of the Supreme Court's recent decision in *Minneci v. Pollard*, 132 S.Ct. 617 (2012). In *Minecci*, the Supreme Court declined to extend *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), to find an implied cause of action under the Eighth Amendment against employees of a private company that operated a federal prison facility. The Court refused to recognize the new *Bivens* claim "primarily because [the plaintiff/respondent]'s

Eighth Amendment claim focuses upon a kind of conduct that typically falls within the scope of traditional state tort law. And in the case of a privately employed defendant, state tort law provides alternative, existing process capable of protecting the constitutional interests at stake." *Id.* at 623 (internal quotations omitted).

Defendants argue that I should "extend" *Minecci* to block § 1983 actions against private employees working in state prisons because, as with their federal counterparts, they are subject to state tort law which provides an adequate remedial framework for injuries they may cause. This argument fails. *Minecci* deals solely with the question of when the judicial branch should recognize an implied cause of action under *Bivens*. It has absolutely no bearing on § 1983 cases, where Congress has already created a cause of action.

The Supreme Court has long recognized that private physicians and nurses who contract with the state to provide medical care to prisoners act "under color of law" for purposes of § 1983. *West v. Atkins*, 487 U.S. 42 (1988). Defendants' attempt to distinguish this case from *West* based on different contractual terms regarding liability and indemnification is unavailing: "[i]t is the physician's *function* within the state system, not the precise terms of his employment, that determines whether his actions can fairly be attributed to the State." *Id.* at 55-56. And if the Supreme Court somehow intended a case about whether to recognize a new *Bivens* action to overturn a long line of established law on who may be a § 1983 defendant, as Defendants argue, it would need to say so explicitly (and provide considerable explanation).

  B. *Monell* **Claims**

Defendants next argue that Plaintiff has not pled sufficient facts to get its *Monell* claims over the *Iqbal* plausibility bar. A municipality or other local government may be liable under § 1983 when "action pursuant to official municipal policy" causes the constitutional deprivation. *Monell v. New York Dept. of Social Servs.*, 436 U.S. 658, 692 (1978). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 131 S.Ct. 1350, 1359 (2011).

By my reading of the Complaint, Plaintiff seeks to establish *Monell* liability for Defendants CHC, HPL, and Grundy County based exclusively on a failure to train/discipline theory (Compl. ¶¶ 50, 52). "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick*, 131 S.Ct. at 1359. However, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id*. To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to "deliberate indifference to the rights of persons with who the [untrained employees] come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 131 S.Ct. at 1360 (internal citation omitted).

To demonstrate deliberate indifference in the failure to train context, a plaintiff typically must prove a pattern of similar constitutional violations by untrained employees. *Id*. at 1360.[2] This pattern, or recurring string of related unconstitutional conduct, is necessary because it establishes that policymakers knew or should have known that their employees' training was deficient. When decisionmakers adhere to training programs that they know to be inadequate, they consciously disregard the consequences of their actions and can be fairly said to be a moving cause of the constitutional violations proximately carried out by their employees. *Id*. Anything short of this conscious disregard, however, strays into *respondeat superior* territory, which is not recognized under § 1983.

The precise pleading requirements for failure to train claims in the post-*Iqbal* world are not entirely clear. On the one hand, failure to train claims are clearly not subject to a heightened pleading standard over and above Rule 8. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1993). On the other hand, given its "nebulous" nature, *Oklahoma City v. Tuttle*, 471 U.S. 808, 822 (1985), it would seem that a relatively high level of factual specificity is required at the pleading stage to make a failure to train claim facially plausible. *See Swanson* 614 F.3d at 405. ("A more complex case . . . will require more detail, both to give the opposing party notice of what the case is all about and to show how, in the plaintiff's mind at least, the dots should be connected.").

The instant Complaint is sorely lacking in factual specificity. No details are given as to when Plaintiff began suffering seizures, how many seizures he suffered, how long the seizures

---

[2]In rare cases, a violation of federal rights may be so obviously foreseeable that a single occurrence, coupled with the appertaining showing of failure to train, suffices to establish deliberate indifference. *Canton*, 489 U.S. at 390, n. 10. This is not one of those cases.

lasted, when he notified Defendants of his condition, or whether any Defendants actually observed him having a seizure. Nevertheless, as discussed in greater detail below, I am allowing most of the individual claims through. What is fatal to the *Monell* claims, however, is that Plaintiff makes no attempt to plead a pattern of similar constitutional violations with any degree of factual specificity. We are told only that "[i]t is common to observe detainees in Grundy County Jail with clear symptoms of serious medical illness, injury, or conditions who frequently ask for medical care or to see a doctor, whose requests are routinely delayed or completely ignored." (Compl. ¶ 48). We are then given a list of "specifics", which is really nothing more than the general allegation contained in the previous paragraph restated four different ways. (Compl. ¶ 49).

I cannot say precisely where the facial plausibility line should be drawn for post-*Iqbal* failure to train claims. But I can say with a fairly high degree of certainty–particularly in light of the Supreme Court's recent ruling in *Connick*, emphasizing the "tenuous" nature of failure to train liability and the need to demonstrate a pattern of recurring constitutional violations–that this complaint falls short of that line.[3] 131 S.Ct. 1350. The claims against Grundy County, CHC and HPL are dismissed without prejudice. Plaintiff may replead against these Defendants in a more fact-specific manner. Of particular importance, Plaintiff must give more details concerning other similar constitutional violations that have occurred at the Grundy County Jail such that

---

[3]To be clear, *Connick* is not about pleading standards. However, the opinion makes clear that the Supreme Court considers a failure to train claim to be among the most difficult theories for a § 1983 Plaintiff to prevail under because of its factual complexity. If *Iqbal* plausibility operates as a sliding scale based on the inherent complexity of a claim, as the Seventh Circuit has suggested it does, *see Swanson* 614 F.3d at 405; *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009) ("[t]he height of the pleading requirement is relative to circumstances), then failure to train claims demand a relatively high level of factual specificity at the pleading stage.

Defendants' deliberate indifference to the consequences of a failed training program can be plausibly inferred.

**C.     Conspiracy**

Defendants argue that Count III, § 1983 conspiracy, should be dismissed against all Defendants for failure to state a claim under *Iqbal*'s plausibility standard.  In *Cooney v. Rossiter*, 583 F.3d 967 (7th Cir. 2009), Judge Posner explained that even before *Iqbal*, conspiracy allegations were held to a higher pleading standard and that "mere suspicion that persons adverse to the plaintiff had joined a conspiracy against him or her was not enough." *Id*. at 971.  Post-*Iqbal*, Judge Posner explained, "the height of the pleading requirement is relative to circumstances."  Where a "vast, encompassing conspiracy" is alleged, "the plaintiff must meet a high standard of plausibility." *Id*. at 971.

Here, Plaintiff alleges a conspiracy between the Grundy County Defendants and the Medical Care Provider Defendants to "deprive Plaintiff of his constitutional rights and to protect one another from liability."  However, the complaint does not contain a single fact to support the conspiracy claim–not even of the loose "on information and belief" type.  Instead the conspiracy claim is tacked on at the end almost as an afterthought.  This vague and conclusory pleading would probably not have survived pre-*Iqbal*; it certainly fails now. *Id.*

The conspiracy claims is dismissed without prejudice as to all Defendants.

**D.     Remaining Claims**

1.     <u>Denial of Medical Care</u>

Defendants claim that Plaintiff has failed to state a plausible claim for denial of medical care.  For Plaintiff's claim to survive, he must allege that he (1) "suffered an objectively serious

9

harm that presented a substantial risk to his safety, and (2) the defendants were deliberately indifferent to that risk."[4] *Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010). Plaintiff has adequately pled both.

Unmedicated epilepsy is an objectively serious medical condition that poses a substantial risk to the epileptic's safety. *Hudson v. McHugh*, 148 F.3d 859, 863 (7th Cir. 1998). As to deliberate indifference, the complaint alleges that Defendants (1) knew that Plaintiff was suffering from seizure because he told them as much and they had occasion to observe his physical symptoms; (2) knew he was not being treated properly because he told them he was not regularly receiving anti-seizure medication and the seizures continued; and (3) did nothing about it.

The facts contained in the complaint support a plausible inference of denial of medical care as to 1) Grundy County Defendants Van Cleave, Walker and Unknown Employees; and 2) Dr. Cullinan and Nurse Clauson. These are the defendants who had daily interaction with Plaintiff, or were directly responsible for his medical care. The complaint specifically alleges that Plaintiff repeatedly told Defendants Van Cleave and Walker that he needed to see a doctor

---

[4]The deliberate indifference standard applies to the denial of medical care claim brought under the Eighth and Fourteenth Amendments. *Rosario v. Brown*, 2012 WL 661679, at *4 (7th Cir. Mar. 1, 2012). Insofar as Plaintiff has a claim under the Fourth Amendment, the question is whether Defendants' response to Plaintiff's medical needs was objectively unreasonable. *Ortiz v. City of Chicago*, 656 F.3d 523, 530 (7th Cir. 2011). I agree with Plaintiff that it is premature to determine whether Count I arises under the Fourth, Eighth or Fourteenth Amendment. It appears that most of the alleged injuries occurred after Plaintiff's probable cause hearing and before his conviction, which would mean the Fourteenth Amendment applies. *Id*. However, it is possible that a claim for denial of medical care arose under the Fourth Amendment during the few days before the probable cause hearing, or possibly under the Eight Amendment if, after conviction, Plaintiff remained in the Grundy County Jail for any period of time. *Id*. None of these possibilities are well pled in the complaint but, given the negligible added discovery burden, I prefer to allow Plaintiff to proceed under all theories at this point.

but his requests were ignored. (Compl. ¶ 35). It also states that Defendant Clauson routinely provided Plaintiff with blatantly inappropriate treatment and ignored his requests for anti-seizure medication. (Compl. ¶¶ 36-37). Although no specific facts are alleged as to Defendant Cullinan's knowledge of Plaintiff's condition, as the person in charge of Plaintiff's medical care–including his prescription regime–we may plausibly infer his knowledge at this stage.

The complaint does not, however, contain adequate facts to sustain the denial of medical care claim as to Defendants Marketti and McComas. Aside from the bare assertion that "Plaintiff told the Grundy County Defendants and the Medical Care Provider Defendants that he needed his medications" (Compl. ¶ 31), there are no well-pled facts to show that Defendants Marketti and McComas had actual knowledge of Plaintiff's condition. Given the relative complexity of denial of medical care claims, Plaintiff needs to put forth some specific facts pointing to these Defendants' knowledge of his condition in order to nudge his claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 547. Count I is dismissed without prejudice as to Defendants Marketti and McComas.[5]

2. <u>Intentional Infliction of Emotional Distress</u>

I apply the same basic reasoning as above to sustain the IIED claims against Defendants Van Cleave, Walker, Unknown Grundy County Employees, Dr. Cullinan and Nurse Clauson, and

---

[5] It seems unlikely that Plaintiff directly told Defendants Marketti and McComas about his medical problems. If in fact he did, it should not be difficult to provide some factual detail about the circumstances. If he did not, Plaintiff should allege facts to show another plausible avenue through which Marketti and McComas would have gained this knowledge (i.e. they were routinely on the line observing inmates in their cells, they consistently received inmate health reports from the Medical Care Provider Defendants, the inmate population is so low that it is implausible they could not have known, etc). It does not take much, but there has got to be *something* concrete to go on before forcing Defendants into discovery. *See Cooney*, 583 F.3d at 971.

dismiss without prejudice as to Defendants Marketti and McComas. I agree with Plaintiff that the facts here fit into the "different case" scenario envisioned by the Seventh Circuit in *Sanglap v. LaSalle Bank, FSB*, 345 F.3d 515, 519 (7th Cir. 2003), but I am not satisfied with the allegations surrounding Defendant Marketti and McComas' predicate knowledge of Plaintiff's condition.

      3.      <u>Failure to Intervene</u>

Defendants argue that I should dismiss the failure to intervene claim because, as to Defendants Cullinan and Clauson, it is duplicative of the failure to provide medical care claim, and, as to the Grundy Defendants, there is no case law holding that prison guards have a duty to intervene against the actions of medical personnel. I am unpersuaded by both arguments. While it is true that failure to provide medical care and failure to intervene are essentially claims of failure to perform a duty required by law, they stem from different duties. Failure to provide medical care stems from the defendant's own personal responsibility to provide care directly to persons. Failure to intervene stems from the defendant's duty to protect persons against the conduct of other. The two may overlap, but they are not commensurate.

For example, Defendant Clauson could, hypothetically, be held liable under a failure to intervene theory but not under a failure to provide adequate medical care theory if she had reason to know that, as a result of his deliberate indifference, Dr. Cullinan had failed to prescribe Plaintiff anti-seizure medication and did nothing to remedy the situation. Nurse Clauson could not prescribe the medication herself so it would be difficult to reach her under a failure to provide medical care claim. However, if she had reason to know that the anti-seizure medication was necessary to prevent harm to Plaintiff, and she had the opportunity to prevent the harm–either by

12

confronting Dr. Cullinan or reporting him to a superior–she could be held liable under a failure to intervene claim.

As to whether the Grundy Defendants had a duty to intervene against Defendants Cullinan and Clauson, Defendants point to no persuasive authority to support their argument that law enforcement should be categorically excused from the duty to intervene against the provision of constitutionally inadequate medical care by doctors and nurses. Failure to intervene liability is not limited to the context of excessive force cases or to employees within the same governmental entity. *Windle v. City of Marion*, 321 F.3d 658, 663 (7th Cir. 2003). On the other hand, it is "not so broad as to place a responsibility on every government employee to intervene in the acts of all other government employees." *Id.* Rather, there must be some particular connection or relationship between the government employees or entities such that the duty to intervene arises.

Here, where the Grundy County Defendants and the Medical Care Provider Defendants both worked onsite at the jail and shared the same general responsibility of providing for the inmates' safety, an adequate relationship exists and the duty arises. Of course, it may be relatively difficult for Plaintiff to show that the Grundy County Defendants breached their duty. In the context of failure to provide medical care, the third party harm may be more difficult to detect than in an excessive force case, or they may have acted reasonably in deferring to the medical judgment of Dr. Cullinan and Nurse Clauson. But these are fact issues to be settled at a later stage. The claim itself is appropriately brought.

As to whether Plaintiff has satisfied Rule 8, I incorporate the same reasoning as above to allow the failure to intervene claim to go forward against Defendants Van Cleave, Walker, Unknown Grundy County Employees, Dr. Cullinan and Nurse Clauson, and dismiss without prejudice as to Defendants Marketti and McComas.

4. Unreasonable Detention

Counts II stands against the individual defendants and is dismissed against Grundy County for the same inadequate *Monell* pleading reasons described above.

5. Counts VI and VII

Counts VI and VII stand insofar as is consistent with the rest of this ruling.

## III. CONCLUSION

For the foregoing reasons, the motions to dismiss are GRANTED as to Count I against Grundy County, CHC, HPL, Marketti and McComas; Count II against Grundy County; Count III in its entirety; Count IV against Grundy County, CHC, HPL, Marketti and McComas; and Count V against Marketti and McComas. All other motions to dismiss or for judgment on the pleadings are DENIED.

ENTER:

James B. Zagel
United States District Judge

DATE: June 8, 2012